UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America

        v.                                        Crim. Action No. 2:06-cr-15-1

John Chinnici,

        Defendant.

## REPORT & RECOMMENDATION
(Doc. 121)

Defendant John Chinnici, proceeding *pro se*, moves under 28 U.S.C. § 2255 to vacate his sentence imposed in the United States District Court for the District of Vermont on May 16, 2008. Chinnici contends that the district court committed multiple legal errors in applying the United States Sentencing Guidelines ("USSG"). The government opposes the Motion, arguing that it was filed after the statutory one-year limitations period expired. For the reasons set forth below, Chinnici's Motion should be DENIED.

## Background

**I.    Chinnici's Guilty Plea and the Presentence Report**

On February 22, 2006, the federal grand jury returned a five-count Indictment charging Chinnici and a codefendant with violations of the Gun Control Act, 18 U.S.C. § 921 *et seq*. Pursuant to a written plea agreement, Chinnici pleaded guilty to Count Two of the Indictment on November 13, 2006. Count Two charged Chinnici with violating 18 U.S.C. § 922(g)(1) by possessing a firearm as a previously convicted felon. United States

District Judge William K. Sessions III accepted Chinnici's guilty plea and ordered the preparation of a presentence report ("PSR").

In the PSR, the U.S. Probation Office concluded that, based on an offense level of thirty-two and a criminal history category of III, Chinnici faced an advisory sentencing guideline range of 151-188 months. But because the statutory maximum for a violation of § 922(g)(1) is ten years, Chinnici's advisory sentencing guideline range was limited to the 120-month maximum.

The Probation Office made this calculation applying USSG §2K2.1. The PSR set Chinnici's base offense level at 20 under §2K2.1(a)(4) because Chinnici had a previous felony conviction for a "crime of violence" as defined by USSG §4B1.2, to wit, a Vermont state conviction for burglary. Commencing with a base level of 20, six levels were added under §2K2.1(b)(1)(D) because Chinnici's offense involved between twenty-five and ninety-nine firearms. Two levels were added under §2K2.1(b)(4) because the firearms were stolen, and four levels were added under §2K2.1(b)(5) because Chinnici possessed the firearms in connection with another felony offense and also transferred the firearms with knowledge, intent, or reason to believe that the firearms would be used or possessed in connection with another felony offense. Finally, Chinnici was not accorded the three-level reduction for acceptance of responsibility pursuant to §3E1.1(a) and (b) because Chinnici had violated his release conditions. *See* PSR ¶¶ 66, 70.

Chinnici's prior criminal record placed him in criminal history category III. (PSR ¶ 86.) Two convictions for residential burglaries in 2003 constitute the "crimes of violence" supporting the PSR's base offense level of 20. (PSR ¶ 82.) According to the

PSR, the owner of one of the residences reported that although the house was vacant at the time of the burglary, the owner and her child had been at the house three days before.

## II. Sentencing

Prior to sentencing, Chinnici, through counsel, filed a sentencing memorandum in which he made several objections to the PSR's guideline calculation. Chinnici argued that his prior burglary conviction was not a "crime of violence" as that term is used in §2K2.1(a)(4) because his burglary involved entry into "an empty house." Chinnici also claimed that he was entitled to the three-level reduction for acceptance of responsibility under §3E1.1(a) and (b). He argued that he admitted his culpability in a timely manner by pleading guilty, and attributed subsequent violations of release conditions to an "agitated emotional state."

Chinnici appeared for sentencing on May 16, 2008. He and his counsel stated that they had no factual objections to the PSR beyond those identified as part of their legal objections to the guideline calculation. The Court then adopted the PSR's guideline calculation, agreeing that Chinnici's burglaries were "crimes of violence" as defined in the Guidelines, and denying Chinnici the three-level reduction for acceptance of responsibility. However, the Court downwardly departed from the guideline range after considering the factors set forth in 18 U.S.C. § 3553(a). The Court concluded that Chinnici's criminal history was overstated, that a "modest adjustment" was appropriate in light of the four-level increase for the transfer of the firearms in connection with another felony offense, and that Chinnici's difficult upbringing was a mitigating sentencing factor. For all of these reasons, the Court adjusted the offense level to 28 (down from 32)

and the criminal history category to II (down from III). Applying a new guideline range of 87-108 months, the Court sentenced Chinnici principally to 90 months' imprisonment, to be followed by a two-year term of supervised release.

### III. Direct Appeal

Chinnici appealed his sentence to the Second Circuit Court of Appeals. There Chinnici argued that the district court (1) violated the "parsimony clause" of 18 U.S.C. § 3553 in determining Chinnici's guideline range before departing to a non-guideline sentence; and (2) erred in calculating its downward departure by starting at the higher guideline range rather than the lower statutory maximum of 120 months. The Second Circuit affirmed Chinnici's conviction and sentence—finding neither procedural nor substantive error—in a summary order on January 9, 2009, and issued its mandate to the district court on February 2, 2009. *See United States v. Chinnici*, 305 F. App'x 813 (2d Cir. 2009).

### IV. Chinnici's § 2255 Motion

Chinnici filed the instant § 2255 Motion on December 17, 2012 (Doc. 121). Chinnici seeks to vacate his sentence on two separate grounds: (1) that his prior burglary conviction(s) was not a "crime of violence" because the residence he burglarized was unoccupied; and (2) he should have been awarded a §3E1.1 adjustment for acceptance of responsibility because "[i]n [his] plea agreement, [Chinnici] was to receive a 2 point level of accept[ance] and 1 point reduction for participation with PSI interviews." (Doc. 121 at 5.)

## Discussion

### I. Legal Standards

Section 2255 provides relief from fundamental defects in a criminal prosecution. *See United States v. Addonizio*, 442 U.S. 178, 185 (1979). This form of collateral attack is therefore available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000) (quoting *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995)); *see also* 28 U.S.C. § 2255(a).

Given its collateral nature, a petitioner may not use a § 2255 motion "as a substitute for a direct appeal." *Marone v. United States*, 10 F.3d 65, 67 (2d Cir. 1993) (citing *United States v. Frady*, 456 U.S. 152, 165 (1982)). Thus, the general rule is that a claim not raised on direct appeal is procedurally defaulted, and may not provide the basis for relief absent a showing of cause for the omission and prejudice resulting therefrom. *See Bousley v. United States*, 523 U.S. 614, 622 (1998).

In addition, § 2255 motions are subject to a one-year statute of limitations. *See* 28 U.S.C. § 2255(f); *see also Moshier v. United States*, 402 F.3d 116, 118 (2d Cir. 2005). For federal criminal defendants who, like Chinnici, do not file a petition for certiorari with the Supreme Court on direct appeal, their conviction becomes final, and the one-year limitation period starts to run, when the time for seeking Supreme Court review expires. *See Clay v. United States*, 537 U.S. 522, 532 (2003); *see also Burrell v. United States*, 467 F.3d 160, 163-64 (2d Cir. 2006) (explaining "that a judgment of conviction

becomes final for purposes of § 2255 'when the Supreme Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires.'") (quoting *Moshier*, 402 F.3d at 118) (other internal quotation marks omitted).[1]

## II.  Chinnici's Claims Are Procedurally Barred

Here, both of Chinnici's claims are procedurally barred because they were not raised on direct appeal. As noted above, a defendant is barred from collaterally challenging an alleged error that he did not appeal, unless he can establish cause and prejudice. *See United States v. Thorn*, 659 F.3d 227, 231 (2d Cir. 2011). Establishing cause requires demonstrating "some objective factor external to the defense" that impeded his ability to appeal. *McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)); *see also Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008). Such objective factors may include "the state's creation of an external impediment, situations in which the factual or legal basis for a claim was not reasonably known by the petitioner, or ineffective assistance of counsel." *Maxwell v. United States*, 2012 WL 1191901, at *3 (S.D.N.Y. Apr. 10, 2012); *see also Coleman v. Thompson*, 501 U.S. 722, 752 (1991) (stating that "cause" is "something external to the petitioner" that "cannot fairly be attributed to him").

Under this standard, Chinnici has failed to establish sufficient cause for his default. Chinnici essentially argues that he did not appeal the errors alleged in his § 2255

---

[1] Given this rule, the government is incorrect when it states that Chinnici's conviction became final when the district court received the Second Circuit's mandate on March 6, 2009. (Doc. 125 at 2.)

Motion because, at the time of his appeal, he wrongfully believed that the claims were futile. He has since come to understand that his constitutional rights were violated, and so now raises the claims for the first time in the instant Motion. Chinnici doesn't explain why or how he came to believe that he was entitled, as a matter of constitutional law, to an adjustment for acceptance of responsibility, but he does vaguely refer to recent, unnamed Eighth and Ninth Circuit cases that supposedly support his argument that burglary of an unoccupied dwelling is not, for purposes of the Guidelines, a crime of violence.

To the extent that Chinnici is claiming mere ignorance of the law—i.e., that at the time of appeal he didn't understand his constitutional rights but now he does—that is an insufficient basis to establish cause. *See Neff. v. United States*, 971 F. Supp. 771, 774 (E.D.N.Y. 1997) ("An appellant's ignorance of the law does not satisfy the cause and prejudice requirements necessary to excuse appellant's failure to seek relief on direct appeal"). Likewise, Chinnici's reliance on futility as the basis for cause—i.e., that new case law has breathed life into a claim that was once doomed to fail—is also inadequate. To demonstrate cause based on futility, a defendant must show not just that "subsequent legal developments have made counsel's task easier," but also that "at the time of the default the claim was [not] 'available' at all." *Thorn*, 659 F.3d at 233 (citing *Smith v. Murray*, 477 U.S. 527, 537 (1986)). Here, Chinnici has not alerted the Court to any "subsequent legal developments" in the case law or anything else relevant to his claims, and thus he has failed to show cause. (As explained further below, there is no such case law, and Chinnici's claims are as meritless today as they were when he filed his appeal.)

7

*See, e.g.*, *Gerbacio-Linch v. United States*, 2006 WL 2109434, at *5 (S.D.N.Y. July 28, 2006) (denying § 2255 motion where petitioner "offers no explanation for his failure to raise on appeal his claim of insufficient evidence").

### III. The Motion is Barred by the Statute of Limitations

Chinnici's Motion is also barred by the one-year statute of limitations for § 2255 motions. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a one-year limitations period for defendant's seeking relief under § 2255. The one-year limitations period starts from the latest of:

> (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). Here, even assuming that Chinnici had ninety days to petition for a writ of *certiorari* from the date on which the district court received and docketed the Second Circuit's mandate (as opposed to the earlier date on which the Second Circuit *issued* the mandate), his conviction became final in June 2009. Therefore, his § 2255 Motion was due one year later, in June 2010. He did not file the Motion until December 17, 2012, more than two years after the statute of limitations had lapsed.

The doctrine of equitable tolling applies to § 2255's one-year limitations period, *see Villanueva v. United States*, 346 F.3d 55, 62 (2d Cir.2003), but may be invoked "only

in 'rare and exceptional circumstances,' where [the court] [finds] that 'extraordinary circumstances' prevented a party from timely performing a required act, and that the party 'acted with reasonable diligence throughout the period he [seeks] to toll.'" *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005) (quoting *Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir. 2004)). The term "extraordinary" does not refer to the uniqueness of the defendant's circumstances, "but rather how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period." *Diaz v. Kelly*, 515 F.3d 149, 154 (2d Cir. 2008).

In order to show that extraordinary circumstances prevented a defendant from filing his petition on time, he must "'demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the [defendant], acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances.'" *Hizbullahankhamon v. Walker*, 255 F.3d 65, 75 (2d Cir. 2001) (quoting *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000)).

Save, perhaps, for his own lack of legal knowledge, Chinnici makes no claim that an "extraordinary circumstance" prevented him from filing a timely § 2255 motion. Accordingly, the limitations period should not be tolled, and Chinnici's Motion should be denied as untimely. *See United States v. Greer*, 2011 WL 5353069, at *4 (D. Vt. Aug. 17, 2011) (denying equitable tolling because the defendant "failed to proffer evidence of an 'extraordinary' circumstance sufficient to explain the delay in filing his petition," and

further explaining that, "unfamiliarity with legal matters" does not constitute an "extraordinary circumstance").

## IV. The Motion Lacks Merit

Finally, even if Chinnici's Motion were neither procedurally barred nor untimely, it would still be denied because both of his claims are plainly meritless.

First, while Chinnici concedes, as he did at sentencing, that he had previously burglarized a residence, he argues that the burglary was "nonviolent" under the Guidelines because the residence was unoccupied.[2] This argument fails because the Second Circuit—as well as the Eighth Circuit, on whose case law Chinnici purports to rely—has squarely held that the burglary of a dwelling is *per se* a crime of violence under USSG §4B1.2(a)(2) regardless of whether the dwelling was occupied.[3] *See United States v. Fredette*, 15 F.3d 272, 278 (2d Cir. 1994) ("Under § 4B1.2 burglary of a dwelling is per se a crime of violence. This designation obviates the need for a district court to consider the likelihood of occupancy at the time of the burglary"); *see also id.* ("[F]or purposes of determining career offender status under the Guidelines, there is no such thing as a . . . non-violent burglary of a dwelling"); *United States v. Grummitt*, 390 F.3d 569, 571 (8th Cir. 2004) ("'[i]n classifying burglary of a dwelling as a crime of violence, the Guidelines do not distinguish between dwellings that are occupied versus those that

---

[2] Because Chinnici did not object to it, the district court was entitled to rely on the PSR's factual determination that Chinnici's prior burglaries "occurred at residences." (PSR ¶ 82); *see, e.g.*, *United States v. Beckles*, 565 F.3d 832, 844 (11th Cir. 2009) ("Indeed, the defendant's failure to object to conclusory statements in the PSI renders those statements undisputed and permits the sentencing court to rely upon them without error even if there is an absence of supporting evidence").

[3] *See* USSG §2K2.1 cmt. n.1 ("'Crime of violence' has the meaning given that term in § 4B1.2(a) and Application Note 1 of the Commentary to § 4B1.2.'").

are unoccupied; thus, burglary of a dwelling is a crime of violence regardless of whether there was anyone present in the dwelling during the burglary'") (quoting *United States v. Wright*, 340 F.3d 724, 735 (8th Cir. 2003)); *United States v. Woods*, 61 F.3d 917 (10th Cir. 1995) (unpublished) ("Burglary of a dwelling is considered a crime of violence under 4B1.2 . . . regardless of whether the dwelling is occupied at the time of the burglary"); *United States v. McClenton,* 53 F.3d 584, 588 (3d Cir. 1995) (determining that burglary of a dwelling is a crime of violence whether or not there is anyone present at the time of the burglary). Since Chinnici contends only that the dwelling was unoccupied (and not that he burglarized something other than a dwelling), his argument fails.

Second, the district court had ample factual basis to deny Chinnici an offense-level reduction for acceptance of responsibility. The acceptance of responsibility adjustment is available only to a defendant who clearly demonstrates an acceptance of responsibility for his criminal conduct, not simply one who enters a guilty plea. *See United States v. Sloley*, 464 F.3d 355, 358-59 (2d Cir. 2006) (citing USSG §3E1.1 cmt. n.3). Chinnici contends that he is entitled to the adjustment pursuant to his plea agreement, but this argument is wrong for a multitude of reasons. First, the plea agreement was reached only between Chinnici and the U.S. Attorney's Office for the District of Vermont, and—contrary to Chinnici's assertion that its provisions bound the trial court—it specifically provides that "the Court can consider any and all information that it deems relevant to the sentencing determination." (Doc. 25 ¶ 11.) Moreover, Chinnici violated the terms of the plea agreement, by, among other things, removing his electronic monitoring bracelet and absconding from pretrial supervision for approximately twelve days before he was

arrested by the U.S. Marshal's Service. In light of this violation, the government was free to "terminate . . . its obligations under th[e] [plea] agreement" while also "retaining the defendant's guilty plea." (Doc. 25 ¶ 12.) Chinnici's reliance on his plea agreement is therefore misplaced, and there is no basis to disturb the trial court's denial of acceptance of responsibility. *See United States v. Carmon*, 223 F. App'x 66, 67 (2d Cir. 2007) ("'[B]y absconding, [the defendant] forfeited any rights he arguably may have had based on his cooperation agreement with the government.'") (quoting *United States v. El-Gheur*, 201 F.3d 90, 94 (2d Cir. 2000)); *United States v. Brophil*, 122 F.3d 1057 (2d Cir. 1997) (unpublished) (affirming denial of adjustment for acceptance of responsibility because, among other things, the defendant had absconded).

## Conclusion

For the reasons set forth above, Chinnici's Motion to Vacate Under § 2255 (Doc. 121) is procedurally defaulted, untimely, and, in any case, without merit. It should be DENIED for any or all of these reasons.

Dated at Burlington, in the District of Vermont, this 19th day of March, 2013.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2), 6(a), 6(d); L.R. 72(c). Failure to timely file such objections operates as a waiver of the right to appellate review of the District Court's adoption of such Report and Recommendation. *See* Fed. R. Civ. P. 72(a); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).